[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10507
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cr-00014-JES-SPC-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANDREW F. BELITSKY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 14, 2014)

Before PRYOR, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

On August 20, 2010, a jury convicted Andrew F. Belitsky of knowingly possessing one or more visual depictions involving the use of a minor engaged in sexual activity, in violation of 18 U.S.C. § 2252(a)(4)(B), and distributing one or more visual depictions involving the use of a minor engaged in sexual activity, in violation of 18 U.S.C. § 2252(a)(2).  Proceeding *pro se*,[1] Mr. Belitsky appeals his convictions on multiple grounds.  Following a review of the record and the parties' briefs, we affirm.

## I

The Federal Bureau of Investigation performs non-targeted investigations for child pornography over the Internet.  In conducting its investigations, the FBI uses Limewire, a "peer-to-peer" software that allows a user to share files saved on his computer with other Internet users who can download the files onto their own computers.  Limewire also allows users to search for files saved on other users' computers and download those files onto their own computer.[2]

Using Limewire, on April 21, 2008, FBI Agent Joseph Cecchini found and downloaded 47 files depicting child pornography from an IP address in North Fort

---

[1] In correspondence with the clerk's office, Mr. Belitsky—who had retained counsel in the district court—indicated that he did not want counsel appointed for his appeal.  Although a defendant does not have a constitutional right to proceed *pro se* on direct appeal, *see Martinez v. Court of Appeal of California*, 528 U.S. 152, 163 (2000), we exercise our discretion and allow Mr. Belitsky to do so.

[2] Unlike the standard version of Limewire, which downloads files piecemeal from many users' computers to increase download speed, the FBI uses a special version of Limewire that only allows it to download files from one computer at a time.

Myers, Florida.   After subpoenaing records from the Internet service provider associated with this IP address, the FBI determined that the IP address was assigned to Mr. Belitsky.   Agent Cecchini then forwarded the information to Special Agent John Kuchta of the FBI's Fort Myers office, and based on this information, Agent Kuchta obtained a search warrant for Mr. Belitsky's residence. On May 14, 2008, Agent Kuchta and others executed the search warrant and seized from Mr. Belitsky's home a Hewlett-Packard computer, an Acer computer, and a locked gun safe.   During the search, Mr. Belitsky allegedly confessed to collecting child pornography.

One month later, in June of 2008, FBI analyses of the hard-drives from both computers indicated the presence of child pornography.[3]   The Hewlett-Packard computer contained over 5,000 images of child pornography and the Acer computer contained about 1,000 images of child pornography.

On March 18, 2009, a federal grand jury indicted Mr. Belitsky on one count each of possession and distribution of child pornography.   Mr. Belitsky pled not guilty.   He proceeded to trial in February of 2010, and on March 2, 2010, the district court granted Mr. Belitsky's motion for a mistrial after the jury could not reach a unanimous verdict.

---

[3]   Rather than risk damage to the original hard-drives, the FBI followed standard procedure and made exact mirror-images of the hard-drives for testing purposes.

3

In August of 2010, a new jury was empaneled and Mr. Belitsky proceeded to a second trial. The jury found Mr. Belitsky guilty on both child pornography counts. Following the guilty verdict, Mr. Belitsky twice moved for a new trial under Federal Rule of Criminal Procedure 33. In the first motion he asserted that the evidence at trial was insufficient to support his convictions. In the second motion he alleged ineffective assistance of counsel. The district court ultimately denied both motions, after holding an evidentiary hearing on Mr. Belitsky's allegations of ineffective assistance of counsel. Mr. Belitsky now appeals from his convictions and from the denials of his motions for new trial.

## II

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We review the district court's denial of a Rule 33 motion for abuse of discretion. *See United States v. Sweat*, 555 F.3d 1364, 1367 (11th Cir. 2009). Under this standard, we may reverse the denial of a Rule 33 motion only if the district court made a clear error of judgment or applied the wrong legal standard. *See United States v. White*, 590 F.3d 1210, 1214 (11th Cir. 2001). Furthermore, we recognize that the district court is usually in the best position to evaluate whether the defendant suffered compelling prejudice warranting a new trial

4

because it saw the witnesses and heard all of the evidence.  *See United States v. Pedrick*, 181 F.3d 1264, 1272 (11th Cir. 1999).

## A

Although Mr. Belitsky did not explicitly raise a claim challenging the sufficiency of the evidence for his convictions, we nevertheless construe his *pro se* brief liberally and infer a sufficiency issue from the many doubts he raises in his brief and his appeal of the denial of his first motion for a new trial.[4]  We review *de novo* the sufficiency of the evidence submitted at trial.  *United States v. Garcia–Bercovich,* 582 F.3d 1234, 1237 (11th Cir.2009).  In doing so, we must decide whether a reasonable jury could have found that the evidence established Mr. Belitsky's guilt beyond a reasonable doubt, viewing the evidence "in the light most favorable to the government, drawing all reasonable inferences and making all credibility choices in the government's favor."  *United States v. Silvestri,* 409 F.3d 1311, 1327 (11th Cir.2005).

Mr. Belitsky stipulated at trial that the files contained child pornography. Although he now denies it, as will be discussed later, Mr. Belitsky also stipulated to the images traveling in interstate commerce.  Thus, our sufficiency inquiry is limited to whether Mr. Belitsky *knowingly* possessed and distributed the files

---

[4]  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

containing child pornography. Mr. Belitsky contends that he did not have the requisite knowledge because a virus, the FBI, or some other person placed the files on his computer.

After a thorough review of the record and viewing the evidence in the light most favorable to the government, we find that the evidence was sufficient. First, the two hard drives recovered from Mr. Belitsky's two computers contained about 6,000 images of child pornography in files named with terms commonly-used in the child pornography community. Second, an FBI agent testified that Mr. Belitsky confessed on two different occasions to downloading child pornography from Limewire. Third, using Limewire, an FBI expert downloaded several files containing child pornography solely from an IP address assigned to Mr. Belitsky's residence at the relevant time. Fourth, Mr. Belitsky's computers contained Limewire software, and Mr. Belitsky testified that he used Limewire to download music. Finally, an FBI forensic expert testified that the search history of the Limewire software installed on Mr. Belitsky's hard drives matched the names of files found on the hard drives.

With respect to the alternative theories he proposes, Mr. Belitsky does not cite to any specific portion of the record that would convince a reasonable jury to credit those theories. First, an FBI forensic expert testified that he found no trace of a virus on the hard drives after scanning the hard drives with three different anti-

6

virus programs.  Tellingly, Mr. Belitsky's expert did not specifically testify that he found a virus on Mr. Belitsky's hard drives, but merely suggested that a virus could possibly download child pornography.  Second, Mr. Belitsky does not make any specific allegations of FBI tampering, but merely infers that the FBI planted the child pornography on his computer because there were some alleged inconsistencies in the files.  But Agent Kuchta testified that in executing the search warrant he merely unplugged the computers without operating them whatsoever.  Additionally, the FBI version of Limewire is hardwired to only receive files; that is, it cannot push files onto computers.  Finally, Mr. Belitsky has not definitively identified any other person who could have downloaded the files.  We therefore find the evidence sufficient to support Mr. Belitsky's convictions.

## B

We turn now to Mr. Belitsky's allegations that his counsel was constitutionally ineffective.  The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  That right includes the right to *effective* assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To reverse a conviction for ineffective assistance of counsel, a convicted defendant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense.  *See id.* at 687.  To establish that

7

counsel's performance was deficient, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To establish the requisite prejudice, the defendant must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.* We need not "address both components of the inquiry[, however,] if the defendant makes an insufficient showing on one." *See id.* at 697. We subject claims of ineffective assistance of counsel to *de novo* review because they involve a mixed question of law and fact. *See Caderno v. United States*, 256 F.3d 1213, 1216-17 (11th Cir. 2001).

First, Mr. Belitsky contends that his counsel performed deficiently because he failed to file a motion to exclude evidence based on a defect in the warrant. We disagree. The Supreme Court has held that a defendant is entitled to an evidentiary hearing on errors in a warrant where there are "allegations of deliberate falsehood or of reckless disregard for the truth." *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). "[A]llegations of negligence or mistake are insufficient." *Id.* Here, the only defect in the FBI's search warrant alleged by Mr. Belitsky concerned the description of Mr. Belitsky's residence: according to Mr. Belitsky, the warrant actually described his neighbor's house. Nevertheless, the warrant contained the correct address for Mr. Belitsky's residence, and Mr. Belitsky testified that he and his counsel examined the warrant and found no other errors.

Second, Mr. Belitsky contends that his counsel performed deficiently because he did not file a motion to suppress on the basis of FBI tampering. Again, we disagree. As mentioned above, Mr. Belitsky has not put forth any specific evidence of FBI tampering before or after the seizure. Indeed, Mr. Belitsky's own expert could not definitively determine whether the alleged file inconsistencies were products of a virus or a third-party manipulating Mr. Belitsky's computers. Furthermore, the district court correctly noted that any motion to suppress the evidence on this basis would likely have been denied, as any evidence of FBI tampering would go to the weight of the evidence, and not its admissibility.

Third, Mr. Belitsky contends that his counsel performed deficiently because he failed to file a motion to compel production of the original hard drives in his computer and a motion asserting prosecutorial misconduct on the basis of denial of access to the evidence. Both claims are without merit. Mr. Belitsky's expert testified that he was granted access to hard drive mirror images in lieu of the original hard drives, and that this access was sufficient. Furthermore, aside from the denial of access to the original hard drives, Mr. Belitsky does not assert any other specific allegations of prosecutorial misconduct.

Fourth, Mr. Belitsky contends that his counsel performed deficiently because he canceled a subpoena for Officer Fabio Nahmens, who had testified at Mr. Belitsky's first trial. We are not persuaded. We have stated that "[w]hich

9

witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). The decision to not subpoena Officer Nahmens is a classic example of such a strategic decision. Indeed, Mr. Belitsky's counsel explained at the evidentiary hearing that he canceled the subpoena because Officer Nahmens would have only corroborated the testimony of Agent Kuchta concerning Mr. Belitsky's alleged confession during the execution of the search warrant. Our review of the record confirms that this is correct, because Officer Nahmens testified at the first trial that Mr. Belitsky confessed to downloading child pornography. Agent Kuchta, who only testified at the second trial, also testified as to the same alleged confession. Subpoenaing Officer Nahmens would have resulted in two witnesses testifying to the confession. Thus, Mr. Belitsky's counsel acted reasonably in deciding to not subpoena Officer Nahmens.

Fifth, Mr. Belitsky asserts that his counsel performed deficiently for failing to introduce all of the evidence at trial, including inconsistencies in the computers' time zone settings and testimony about a virus theory. The record clearly shows, however, that Mr. Belitsky's counsel did present all of the evidence available to him at the trial. Mr. Belitsky's counsel specifically questioned the defense expert on both the virus theory and the alleged inconsistencies in the timezone settings.

10

Mr. Belitsky does not allege with any specificity that his counsel failed to present at trial any other potentially exculpatory evidence.

Sixth, Mr. Belitsky asserts that his counsel performed deficiently because he failed to adequately prepare for trial.  But, as previously discussed, Mr. Belitsky's counsel extensively questioned witnesses about all of the evidence, and represented Mr. Belitsky at both of his trials for the same charges.  Although Mr. Belitsky's counsel did admit at the evidentiary hearing that he was not aware of some of the computer logs and should have been, the lapse in knowledge did not prejudice Mr. Belitsky because the same information was available in spreadsheets that were discussed at trial.  Furthermore, Mr. Belitsky's expert was aware of the logs and based some of his testimony on the logs.

In sum, the district court did not abuse its discretion in denying both of Mr. Belitsky's Rule 33 motions for new trial.  The record shows that the evidence supports Mr. Belitsky's convictions and that his counsel did not ineffectively represent him.

## C

Finally, Mr. Belitsky argues on appeal that the district court erred by instructing the jury that, because the parties had stipulated that the admitted images constituted child pornography and had traveled in interstate commerce, the jury could treat those facts as proven.  Specifically, Mr. Belitsky asserts that, in so

11

instructing the jury, the district court improperly usurped the jury's fact-finding role. Mr. Belitsky further contends that he never agreed to stipulate that the child pornography images traveled in interstate commerce.[5]

The invited-error doctrine precludes us from reviewing the jury instructions. *See United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005). We have held that the invited-error doctrine applies when a party's counsel agrees with a district court's proposed jury instruction. *See United States v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001). Here, Mr. Belitsky's counsel invited any alleged errors with respect to the jury instruction because he agreed to the proposed instruction at the charge conference, and he stipulated to the relevant facts. As a result, the invited-error doctrine applies to the jury instructions and we are precluded from reviewing the instructions.

## III

We affirm Mr. Belitsky's convictions and the district court's denial of the motions for a new trial.

**AFFIRMED.**

---

[5] Mr. Belitsky and his counsel signed a written stipulation, which was admitted into evidence at trial, in which they stipulated that the still images contained in exhibits entered into evidence by the government were visual depictions of a minor engaging in sexually explicit conduct, and that the production of each visual depiction involved a minor engaging in sexually explicit conduct. It appears from the record that only Mr. Belitsky's counsel stipulated to the images moving in interstate commerce. To the extent that Mr. Belitsky contends that his counsel acted improperly or rendered deficient performance in stipulating to the interstate commerce element, the record is not sufficiently developed for us to address such a claim, and if he wishes Mr. Belitsky can raise that claim in a motion to vacate under 28 U.S.C. § 2255.