[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12980
Non-Argument Calendar
_____

D.C. Docket No. 9:13-cr-80034-KAM-21

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK DAVIS MOORE, JR.,
a.k.a. Bow Head,
a.k.a. Bodeen,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 15, 2015)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Frank Davis Moore, Jr. appeals his conviction for conspiracy to possess with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846. Moore's conviction stems from his alleged participation in a drug conspiracy in Palm Beach County, Florida. His involvement was ascertained from numerous government-intercepted phone calls, wherein Moore repeatedly purchased or attempted to purchase cocaine from one of his co-conspirators, George Bivins, Jr.

After a federal grand jury issued an indictment charging Moore and 29 other individuals with multiple counts pertaining to schemes to distribute powder cocaine and crack cocaine, Moore and codefendant Jerrick Bartee, who faced charges pertaining to a conspiracy to distribute powder cocaine, proceeded to a joint jury trial. The remaining 28 codefendants entered guilty pleas. On the fifth day of a six-day trial, Bartee also pled guilty and left the trial proceeding. Moore moved for a mistrial but the motion was denied.

The jury subsequently convicted Moore of the one count with which he was charged, conspiracy to possess with intent to distribute 280 grams or more of cocaine base. Moore moved for a new trial, which the district court denied, and this appeal ensued. Moore raises several issues on appeal, which we address in turn. After considering the briefs of the parties and reviewing the record on appeal, we affirm.

2

**I.**

## A.  Motion to Compel Disclosure

On appeal, Moore argues that the district court abused its discretion by denying his motion to compel the government to disclose the identity of the confidential informants (CIs) whom investigators utilized during their investigations into the underlying drug conspiracies.  Moore contends that the court improperly disregarded his argument that an "independent defense investigation" had uncovered that one of the CIs had a significant criminal history, which suggested that this CI or other CIs may have falsely implicated Moore in the crack-cocaine conspiracy.  Moore also contends that, although protection for the CI must be considered in any request to disclose a confidential source's identity, that factor should have been weighed against the right to confrontation.

We apply an abuse of discretion standard when reviewing the district court's denial of a motion to disclose the identity of a confidential informant.  *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991).  In determining whether the government must disclose an informant's identity, a court must conduct a balancing test, focusing particularly on three factors:  (1) "the extent of the informant's participation in the criminal activity"; (2) "the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant"; and (3) "the government's interest in nondisclosure."  *United*

3

*States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985). The defendant has the burden of showing that a CI's testimony "would significantly aid in establishing an asserted defense." *Gutierrez*, 931 F.2d at 1491 (internal quotation marks omitted).

Here, Moore fails to demonstrate how disclosure of the CIs' identities would "significantly aid in establishing [his] asserted defense." *See id.* (internal quotation marks omitted). Instead, in his motion to compel disclosure, Moore only made the conclusory statement that the disclosure would be relevant to his defense. *See id.* ("Mere conjecture about the possible relevance of [the CI's] testimony is insufficient to compel disclosure.").

As for his argument that the CI's criminal history suggests that a CI falsely implicated him in the underlying crack-cocaine conspiracy, this claim also does not rise above "[m]ere conjecture" that the CIs have been untruthful. *See id.* Further, there is no blanket requirement for the defendant to confront every CI utilized in an underlying investigation; this is not one of the three factors that courts balance in deciding whether to override the government's privilege to keep sources confidential. *See Tenorio-Angel*, 756 F.2d at 1509.

Also, Moore's right to confrontation under the Sixth Amendment refers to confronting witnesses against him, and thus would apply to CIs only if the government presented them as witnesses or otherwise presented their testimony.

*See* U.S. Const. amend VI; *McAllister v. Brown*, 555 F.2d 1277, 1278 (5th Cir. 1977) (per curiam) (rejecting the argument that the state's failure to disclose an informant's identity violated the defendant's Sixth Amendment right to confront the witnesses against him).[1]  Here, the CI statements were used by the government for the limited purpose of demonstrating why investigators believed they had established probable cause in order to apply for a Title III wiretap.[2]  Thus, we do not find that the district court abused its discretion in denying Moore's motion to disclose the identity of confidential informants.

## B.  Sufficiency of the Evidence

Moore next argues that there was insufficient evidence to support his conviction for conspiring to possess with intent to distribute crack cocaine.  He contends that evidence of the mere existence of a "buyer-seller" relationship with codefendant Bivins does not prove that he conspired to sell crack cocaine.  Moore also avers that the government failed to show that he had possessed large quantities of money, crack cocaine, or other items related to the conspiracy.

We review de novo a verdict challenged for sufficiency of the evidence, "resolving all reasonable inferences in favor of the verdict."  *United States v.*

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

[2] While testifying, the lead investigating agent, Deputy Charles Ferry, referenced the actions and statements of CIs made during controlled buys with co-conspirator Bivins, which established the probable cause necessary to obtain the wiretap.  The CI statements were not used to implicate Moore.

*Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010).  If there is a reasonable basis in the record for the verdict, we must sustain it.  *Id.*  To convict a defendant of conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that there was (1) an agreement between the defendant and at least one other person, (2) the object of which was to violate the narcotics laws.  *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998).  The government may prove these elements by circumstantial evidence, and need not demonstrate the existence of a formal agreement.  *Id.*  An "agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser."  *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999) (per curiam).

Here, there was sufficient evidence to support Moore's conviction for conspiracy to possess with intent to distribute crack cocaine.  The jury reasonably could have inferred that Moore and codefendant Bivins had an ongoing relationship to distribute crack cocaine, based on testimony and wiretap records detailing that Moore purchased or sought to purchase from Bivins a total of 20 ounces, or 560 grams, of crack cocaine over less than two months.  The volume and frequency of sales imply that Moore and Bivins had an ongoing agreement to further distribute crack cocaine.  *See id.*  Additionally, testimony from investigating agents placed Moore multiple times at locations where Bivins was

6

known to sell crack cocaine and testimony that Bivins entered Moore's vehicle with an unidentified package.

Finally, even assuming that the lack of evidence showing that Moore physically possessed large amounts of drugs or money reasonably suggests that he was not involved in an agreement to distribute crack cocaine, the jury was free to choose the other reasonable hypothesis that the volume and frequency of sales implicated a broader conspiracy. *See Farley*, 607 F.3d at 1333; *see also Toler*, 144 F.3d at 1430.

## C. Admissibility of Testimony

Moore argues that the district court "committed plain error" in admitting certain portions of testimony by lead investigating agent Charles Ferry, on the grounds that the testimony's admission violated the Sixth Amendment's Confrontation Clause as well as evidentiary rules against inadmissible hearsay.

With regard to testimony about wiretap communications, Moore contends that Ferry improperly interpreted certain intercepted conversations. Moore also argues that this portion of Ferry's testimony was composed exclusively of out-of-court statements that did not qualify for the co-conspirator hearsay exemption under Federal Rule of Evidence 801(d)(2)(E). Further, with regard to out-of-court statements by a CI—which concerned controlled buys the CI made while investigators tried to establish probable cause for a wiretap—Moore avers those

statements were impermissible because the CI's statements were unnecessary for the government's case.  Moore also argues in the alternative that, even if Ferry's recounting of the CI's statements did not constitute inadmissible hearsay, its "probative value" was greatly outweighed by its prejudicial effect.

We normally review a district court's evidentiary rulings for abuse of discretion and the factual findings underlying those rulings for clear error.  *See United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012) (per curiam).  However, plain-error rule applies where, as here, a defendant fails to contemporaneously object to an evidentiary ruling.  *See United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007).

Hearsay evidence is inadmissible unless the statement is deemed not hearsay under Federal Rule of Evidence 801(d), or it falls within a hearsay exception.  *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005).  Statements made by a co-conspirator "during and in furtherance of the conspiracy" are not hearsay.  Fed. R. Evid. 801(d)(2)(E).  We apply a liberal standard in determining whether a statement is made in furtherance of a conspiracy.  *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988).

The Confrontation Clause of the Sixth Amendment prohibits only statements that constitute impermissible hearsay; it "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."

8

*United States v. Jiminez*, 564 F.3d 1280, 1286–87 (11th Cir. 2009) (internal quotation marks omitted).

### (1)  Wiretap Communications

Moore has not demonstrated that the district court erred, plainly or otherwise, in admitting Agent Ferry's testimony about the wiretap communications.   Agent Ferry's testimony regarding the intercepted conversations in the wiretap communications does not constitute hearsay.  First, any out-of-court statements made by Moore himself in the intercepted phone calls and text messages constitute prior party admissions.  *See* Fed. R. Evid. 801(d)(2)(A) (statements made by and offered against an opposing party are not hearsay).

Second, out-of-court statements by declarant Bivins fall under Rule 801's co-conspirator exception, because they were made in furtherance of the conspiracy to distribute crack cocaine.  *See* Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S. Ct. 2775, 2778 (1987).  Additionally, because Ferry's testimony about the wiretap's intercepted communications does not constitute hearsay and instead meets the requirements for admissibility under Rule 801(d)(2)(E), there are no grounds for a claim that the Confrontation Clause was violated.  *See United States v. Cross*, 928 F.2d 1030, 1051–52 (11th Cir. 1991).

Moore also raises arguments regarding Agent Ferry's interpretation of testimony. However, "[a] witness [may be] qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. We have held that "[t]he operations of narcotics dealers are a proper subject for expert testimony under Rule 702," and it is a "well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business." *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) (internal quotation marks omitted). Thus, because Agent Ferry qualified as an expert in street-level narcotics, his testimony providing definitions for alleged "code words" and other drug jargon such as "circle" or "chips" was admissible. *See id.* (affirming "the admission under Rule 702 of the expert testimony of a police officer interpreting drug codes and jargon" (internal quotation marks omitted)).

### (2) CI's Out-of-Court Statements

Moore has not demonstrated that the district court erred, plainly or otherwise, in admitting Agent Ferry's testimony about the CI's out-of-court statements. Agent Ferry's testimony regarding the CI's statements does not constitute hearsay, because the testimony was not admitted to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Instead, it was received for the limited purpose of showing the reason why investigators believed they had established

probable cause in order to apply for a Title III wiretap. Hence, because this testimony does not constitute hearsay, there are no grounds for a claim that the Confrontation Clause was violated. *See Jiminez*, 564 F.3d at 1286–87. Nor was this testimony unnecessary and highly prejudicial. Agent Ferry's account of the CI's actions and out-of-court statements did not implicate Moore, but were restricted to the CI's dealings with codefendant George Bivins during controlled buys. Any potential for prejudice against Moore, therefore, was negligible.

## D.  Motion for Mistrial

Additionally, Moore argues that the district court erred in denying his motion for a mistrial. He contends that he suffered "irreparable prejudice" when his codefendant, Bartee, entered a guilty plea while their joint trial was ongoing, at which point the majority of evidence presented by the government had concerned Bartee and the powder-cocaine conspiracy with which he was charged. Moore, however, had been charged with participating in a conspiracy to distribute crack cocaine, and he avers he had no connection to the powder-cocaine conspiracy. Moore contends that, as a result of Bartee's departure from the trial, the jury's perception of him became prejudicially skewed.

We review a district court's denial of a motion for a mistrial for abuse of discretion. *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998). "When a district court issues a curative instruction, we will reverse only if the evidence is so

11

highly prejudicial as to be incurable by the trial court's admonition." *Id.* (internal quotation marks omitted).

Here, the mere fact that a majority of the evidence supported a guilty plea for codefendant Bartee does not result in compelling prejudice against Moore. *See United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir. 1983) (noting that compelling prejudice does not result "simply because much of the evidence presented at trial is applicable only to [the defendant's] codefendants"). Furthermore, the court provided instructions to the jury to counter any effect rendered by Bartee's absence. The court instructed the jury prior to trial to give each defendant's case separate consideration. After Bartee departed the trial proceedings, the court told the jury to refrain from drawing any conclusions about his absence. Further, in charging the jury, the court stated that Moore should be judged only for the specific crime charged against him. *See Trujillo*, 146 F.3d at 845. Thus, the district court did not abuse its discretion by denying Moore's motion for a mistrial.

## E.  Motion for a New Trial

Lastly, Moore argues that the district court abused its discretion by denying his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. Several of his arguments in this respect are reiterations of previous arguments addressed, including that the evidence was insufficient to support conviction and

that Moore suffered prejudice before the jury on account of codefendant Bartee's departure during the joint trial.

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We review the denial of a Rule 33 motion for abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc). Under this standard, we may reverse the denial of a Rule 33 motion only if the district court made a clear error of judgment or applied the wrong legal standard. *See United States v. White*, 590 F.3d 1210, 1214 (11th Cir. 2009).

The district court did not abuse its discretion in denying Moore's Rule 33 motion for a new trial. As discussed above, the fact that the majority of the government's evidence presented prior to codefendant Bartee's departure had concerned the powder-cocaine conspiracy—instead of the crack-cocaine conspiracy with which Moore was charged—does not indicate that Moore suffered any prejudice. *See Walker*, 720 F.2d at 1533–34.

Also, as discussed above, there is no indication that Moore became improperly associated with the evidence regarding the powder-cocaine conspiracy, as the court gave multiple jury instructions for Moore to be tried only on the offense with which he was charged. *See Trujillo*, 146 F.3d at 845. Therefore, Moore fails to demonstrate that the district court made a clear error of judgment or

13

applied the wrong legal standard in denying the motion for a new trial on these

grounds.  *See White*, 590 F.3d at 1214.

## II.

After considering all arguments raised in the parties' briefs and reviewing

the record on appeal, we affirm Moore's conviction.

**AFFIRMED.**